**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Jay Connor, | C/A No:   2:26-cv-3278-JD-MGB |
| Plaintiff, | |
| Vs. | **COMPLAINT** |
| Leads Edge, LLC,  Kristina Penwarden Individually and John Does 1-10. | **JURY TRIAL REQUESTED** |
| Defendants. | |

Plaintiff complaining of the Defendants alleges as follows:

## TYPE OF ACTION

1.     This is an action to recover statutory damages imposed by 47 U.S.C. § 227, and trebled damages constituting forfeiture or other penalty and S.C. Code Section § 37-21.

## PARTIES

2.     Plaintiff is a resident of Charleston County, South Carolina.

3.     The calls ("Calls") alleged in this complaint were made to Plaintiff's wireless phone line in South Carolina.

4.     Defendant Leads Edge LLC ("Leads Edge") is a limited liability company located in Colorado.

5.     Upon information and belief, Leads Edge's principal office is located at 14474 E. Colorado Drive Unit 203 Aurora, CO 80012.

6.     Leads Edge either directly, or by those on its behalf, calls residents of South Carolina, or causes the calls to be made to residents of South Carolina.

1

7.    Leads Edge conducts and transacts business in South Carolina.

8.    Defendant Kristina Penwarden ("Penwarden") is an individual.

9.    Upon information and belief, Penwarden resides in South Carolina.

10.    Penwarden either directly, or by those on its behalf, calls residents of South Carolina, or causes the calls to be made.

11.    Penwarden conducts and transacts business in South Carolina.

12.    The true identity of John Does 1-10 are unknown at this time.

## VENUE AND JURISDICTION

13.    This cause of action arises out of conduct of Defendants initiating or causing telephone solicitations via telephone calls to Plaintiff's wireless telephone number in Charleston County South Carolina.

14.    Plaintiff is a resident of Charleston County.

15.    Pursuant to *Mims v. Arrow Fin. Services. LLC 565* U.S. 368, 372 (2012), this court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under the South Carolina Telephone Privacy Protection Act, S.C. Code Section 37-21, because the state claims arise from the same nucleus of operative fact, i.e., Defendants' telemarketing calls to Plaintiff, and add little complexity to the case. Furthermore, pursuant to Section 37-21-100, "Nothing in this chapter must be construed to limit any remedies, causes of action, or penalties available to a person or governmental agency under another federal or state law."

## The Telephone Consumer Protection Act

16.    "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on

2

phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

17.     "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')...Private suits can seek either monetary or injunctive relief. *Id...*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3

18. The TCPA provides a private right of action under section 47 U.S.C § 227 (c)(5) for a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under the subsection.

### The South Carolina Telephone Privacy Protection Act

19. On May 18, 2018, the State of South Carolina signed into law the South Carolina Telephone Privacy Protection Act, S.C. Code § 37-21-10, et seq.

20. The SCTPPA requires that "at the outset of a telephone solicitation, a telephone solicitor shall provide…the name of the person on whose behalf the telephone solicitation is being made." 37-21-40(A).

21. The SCTPPA prohibits, *inter alia,* a party from initiating, or causing to initiate, a telephone solicitation to a South Carolina telephone number that has been listed on the National Do Not Call Registry. *See* S.C. Code § 37-21-70.

22. The SCTPPA provides a private right of action under section S.C. Code § 37-21-80 for a person who has received a telephone call in violation of the regulations prescribed under the statute.

### Factual Allegations

23. Defendants placed or caused the alleged Calls to be placed to Connor's wireless number.

### Leads Edge

24. Defendant Leads Edge, a self-described lead company, works with realtors to generate potential clients for the realtors.

25. On its website, www.leadsedge.us, (https://www.leadsedge.us/process) Defendant Leads Edge explains "How We Turn Cold Leads Into Warm Conversations" via Multi-Touch

Lead Activation. " Our ISAs engage leads via calls, texts, and emails using your brand's tone for maximum authenticity and response rates."

26. Leads Edge, either directly, or by those on its behalf, makes calls for its realtor clients seeking potential leads.

27. Based on the realtors' home state and location, Leads Edge targets geographic areas by calling area codes where potential clients reside.

28. Upon information and belief, Defendant Leads Edge participated in the Calls alleged herein, had knowledge of the Calls, or by failure to act, allowed such Calls to be made.

<u>Kristina Penwarden</u>

29. Penwarden is a licensed real estate agent with Home Advantage Realty Irmo.

30. Penwarden's South Carlina Real Estate Commission license number is 97728.

31. Upon information and belief, Defendant Kristina Penwarden participated in calls alleged herein, had knowledge of the calls, and directed Leads Edge to target preferred geographic areas in South Carolina cities for potential clients for her.

<u>Telephone calls to Plaintiff</u>

32. Plaintiff Connor is a "person" as defined by 47 U.S.C. § 153(39).

33. Plaintiff is the sole subscriber to the wireless telephone number (843) 281-XXXX.

34. Plaintiff uses the cellular telephone as a personal residential number.

35. Plaintiff placed the number (843) 281-XXXX on the National Do Not Call Registry in 2022.

36. Upon information and belief, between February 18, 2026 through July 9, 2026, Plaintiff received 23 calls by or on behalf of the Defendants.

37. A list of the alleged Calls and corresponding dates and Caller IDs is as follows:

| | | |
|---|---|---|
| 1 | 2/18 | 719-602-7991 |

5

| | | |
|---|---|---|
| 2 | 3/19 | 720-287-7208 |
| 3 | 3/19 | 720-740-1233 |
| 4 | 4/10 | 720-729-9773 |
| 5 | 4/13 | 720-729-9773 |
| 6 | 4/13 | 719-759-8360 |
| 7 | 4/20 | 719-759-8360 |
| 8 | 4/23 | 719-849-2920 |
| 9 | 4/24 | 720-802-4709 |
| 10 | 4/28 | 719-759-8360 |
| 11 | 5/13 | 719-759-8360 |
| 12 | 6/2 | 720-729-9773 |
| 13 | 6/10 | 719-759-8360 |
| 14 | 6/10 | 719-759-8360 |
| 15 | 6/12 | 719-988-3883 |
| 16 | 6/13 | 720-802-4709 |
| 17 | 6/15 | 719-849-2920 |
| 18 | 6/15 | 720-802-4709 |
| 19 | 6/15 | 720-802-4709 |
| 20 | 6/26 | 720-802-4709 |
| 21 | 6/26 | 719-849-2920 |
| 22 | 7/9 | 983-444-7145 |
| 23 | 7/9 | 983-955-0241 |

38.    In 18 of the calls, the agents represented themselves as being with Leads Edge.

39.    The other calls, some that disconnected, transmitted matching Caller ID information with previous Leads Edge calls.

40.    In one of the dropped calls, Plaintiff dialed the number back transmitted in the Caller ID. A representative who identified himself as "Adam" answered the phone and later identified himself to be with Leads Edge.

41.    Every call alleged herein transmitted caller ID telephone numbers with the Colorada area codes 720, 719 or 983,  the home state of Defendant Leads Edge.

**The 3/19/26 Call**

42.     For example, on March 19, 2026, Plaintiff received a call (hereinafter the "3/19/26 Call") to his wireless number, (843) 281-XXXX.

43.     The 3/19/26 Call transmitted the Caller ID 720-287-7208.

44.     The purpose of the call was to deliver a solicitation for real estate services.

45.     During the 3/19/26 Call, the caller represented himself as "Adam".

46.     Plaintiff engaged in a conversation with Adam to identify the source of the 3/19/26 Call.

47.     During the 3/19 Call, Adam said "It's Adam from Leads Edge actually. I just wanted to know that are you willing to buy any kind of property in Bluffton or the surrounding area in South Carolina?"

48.     During the 3/19/26 Call, Plaintiff instructed Adam "No more calls, please to this number".

49.     After the 3/19/26 Call and Plaintiff's Do Not Call request, he continued to receive calls from Leads Edge.

**The 4/10/26 Call**

50.     Another example, on April 10, 2026, Plaintiff received a call (hereinafter the "4/10/26 Call") to his wireless number, (843) 281-XXXX.

51.     The 4/10/26 Call transmitted the Caller ID 720-729-9773.

52.     The purpose of the call was to deliver a solicitation for real estate services for Kristina Penwarden.

53.     Upon information and belief, Kristina Penwarden was a Leads Edge client on or about 4/10/26.

7

54. During the 4/10/26 Call, the caller represented himself as "Adam" with Leads Edge, the same Adam from the 3/19/26 Call.

55. Plaintiff engaged in a conversation with "Adam" to determine why Leads Edge continued to call him after his Do Not Call Request.

56. Plaintiff requested the name of the realtor he was calling for and Adam replied "Kristina Penwarden".

## The 4/23/26 Call

57. Another example, on April 23, 2026, Plaintiff received a call (hereinafter the "4/23/26 Call") to his wireless number, (843) 281-XXXX.

58. The 4/23/26 Call transmitted the Caller ID 719-849-2920.

59. The purpose of the call was to deliver a solicitation for real estate services.

60. During the 4/23/26 Call, the caller said "…this is David from Leads Edge. How are you doing today?"

61. Plaintiff engaged in a conversation with David in an effort to determine why Leads Edge continued to call his number after he instructed Adam with "no more calls" in the 3/19/26 Call.

62. During the 4/23/26 Call, David attempted to solicit real estate services to Plaintiff.

63. At the end of the 4/23/26 Call, Plaintiff instructed David "Don't call me".

64. After the 4/23/26 Call and Plaintiff's Do Not Call request, Plaintiff continued to receive calls from Leads Edge.

## The 7/9/26 Call

65.    Another example, on July 9, 2026, Plaintiff received a call (hereinafter the "7/9/26 Call") to his wireless number, (843) 281-XXXX.

66.    The 7/9/26 Call transmitted the Caller ID 983-444-7145.

67.    The purpose of the call was to deliver a solicitation for real estate services.

68.    During the 7/9/26 Call, the caller identified herself as "Madison".

69.    Plaintiff engaged in a conversation with Madison to identify the source of the call.

70.    Madison attempted to schedule an appointment for Defendant Kristina Penwarden with Plaintiff to solicit her real estate services to Plaintiff.

71.    Upon information and belief, Kristina Penwarden was a Leads Edge client on or about 7/9/26.

72.    During the 7/9/26 Call Madison said "Yeah, so the realtor who is working in Columbia, his name is, sorry, her name is Kristina Penwarden."

73.    During the 7/9/26/ Call, Madison also said "..and the last thing I just wanted to ask you if you could visit our website right now. It's leadsedge.us and book a free call there."

74.    Plaintiff engaged in the conversation with Madison to determine why Leads Edge continued to call his number after he instructed Leads Edge to stop calling him in previous calls.

75.    Plaintiff's privacy has been violated by the above-described telemarketing calls.

76.    Prior to filing the instant case, Plaintiff requested evidence of consent from the Defendants for the above referenced calls.

9

## CAUSES OF ACTION
### Count One:
### Violations of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

77.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

78.    By placing 23 telemarketing calls to the Plaintiff's telephone number, which he registered on the National Do-Not-Call Registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff's number on their Do-Not-Call list, Defendants jointly and severally, violated 47 U.S.C. § 227 (c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

79.    The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(c), and Plaintiff is entitled to an award of $500 - $1,500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R.§64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

### Count Two:

### Violations of the SCTPPA

80.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

81.    The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the SCTPPA, including: (a) initiating a call to a telephone number on the federal Do

10

Not Call Registry (b) the failure to "shall provide, in a clear and conspicuous manner, a first and last name to identify himself and provide the name of the person on whose behalf the telephone solicitation is being made"

82.     The Defendants' violations were negligent and/or knowing.

83.     The SCTPPA allows for aggrieved individuals to initiate an action and recover $1,000 for each negligent violation and $5,000 for each willful violation of the SCTPPA as well as attorneys' fees and costs. S.C. Code § 37-21-80.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief, temporarily and permanently:

- For the statutory damages of $500 to $1,500 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the TCPA;

- For the statutory damages of $1,000 to $5,000 per violation to be awarded to the Plaintiff for each of the Defendants' violations of the SCTPPA;

- For an award of attorneys' fees pursuant to the SCTPPA;

- For unspecified punitive damages in an amount to be determined by the jury.

Respectfully Submitted,

Jay Connor Plaintiff, *Pro Se*
215 East Bay Street 201-F
Charleston, SC 29401
Jayc650@hush.com
(843) 557-5724 (Residential)

11